IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| CLACKAMAS COUNTY ASSESSOR, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 110177N |
| | ) | |
| v. | ) | |
| | ) | |
| MARTIN KARGE and BARBARA KARGE, | ) | |
| | ) | |
| Defendants. | ) | **DECISION** |

Plaintiff appeals the real market value of property identified as Account 01782798

(subject property) for the 2010-11 tax year. A trial was held on October 6, 2011, in the Tax

Courtroom, Salem, Oregon. Matt Healy (Healy), Clackamas County Senior Appraiser, appeared

and testified on behalf of Plaintiff. Martin Karge (Karge) appeared and testified on behalf of

Defendants. Plaintiff's Exhibit A ("Summary Appraisal Report" prepared by Healy) was offered

and received without objection. Defendants' Exhibit 1 was offered and received without

objection. Defendants' Rebuttal Exhibit 1, offered for the purpose of rebutting several of

Healy's adjustments to Plaintiff's comparable sales, was received over Plaintiff's objection.

I. STATEMENT OF FACTS

Healy testified that he inspected the subject property on April 27, 2010. (Ptf's Ex A at

A-1.) The subject property is a "large, custom built" home with a 5,180 square-foot "main

level," a 902 square-foot "upper story," and a 3,312 square-foot "attached garage" with "tall

ceilings to accommodate recreational vehicles." (*Id.*) The subject property is located

"approximately [five] miles east of the City of Oregon City" in a "subdivision of large good

quality homes on small acreage sites[.]" (*Id.*) Healy testified that the subject property was

constructed using very high-quality materials and excellent workmanship, including marble

floors, "extensive woodwork," granite counters, and some areas with travertine floors. (*See id.*) The subject property also includes a "built-in swimming pool and hot tub with a stone deck covering and stone wall accents and a high ceiling * * * surrounded by glass walls and doors separating the pool and hot tub from the rest of the living area." (*Id.*) Healy describes the indoor, enclosed pool area as "very unique[]," "visually striking," and "the center piece of the home[.]" (*Id.*) The subject property area has "territorial and Mt. Hood views[.]" (*Id.*)

A.     *Plaintiff's Comparable Sales*

Healy testified that the subject property is across the street from a "Street of Dreams" subdivision; nearby homes are not as nice as the Street of Dreams homes, but are still similar in quality. Healy identified five comparable sales, all but one of which are located within 0.38 miles of the subject property. (*See* Ptf's Ex A at A-6, A-8.) Healy's sale 1 is located eight miles southwest of the subject property. (*Id.*) Healy testified that sales 3, 4, and 5 are all in the Street of Dreams subdivision and that 3 and 5 are both Street of Dreams homes. He testified that sale 5 is superior to the subject property and sale 3 is similar. Healy testified that sale 4 is not a Street of Dreams home; it is of inferior quality and "piggy backs" on the name. Healy testified that the subdivision homes are in a row with one continuous fence along the subdivision that serves as a visual barrier; the subdivision is not gated. He testified that sales 3, 4, and 5 all have Mt. Hood views superior to that of the subject property. Healy testified that he made an adjustment of $25,000 to sales 3 and 4 for the subject property pool; sale 5 has a putting green, which he considered to be similar to the subject property pool, so he did not adjust for the pool.

Healy testified that sale 2 is inferior in quality to the subject property and it has a "smaller above grade finished area." (*See* Ptf's Ex A at A-7.) He testified that the sale 2 basement is completely unfinished, according to county records, but the listing records indicate

that it is partly finished; he treated it as 50 percent finished. Healy testified that sale 2 has a pool and a good quality sport court; he considered the sale 2 pool to be comparable to the subject property, so he made an adjustment of -$25,000 for the sport court. (*See* Ptf's Ex A at A-6, A-7.) He testified that sale 1 is located in a rural area outside of Oregon City and has a view of the Willamette River; it is located about 350 feet from the highway, so it suffers from some noise.

Healy's time adjustments were based on Plaintiff's "ratio study" that revealed an 11 percent decrease in value between January 1, 2009 and January 1, 2010, and a six percent decrease between January 1, 2010 and January 1, 2011. (Ptf's Ex A at A-7.) Healy's adjustments for "dwelling size" and "amenities" were based on the Department of Revenue cost factor book. (*Id.*) He adjusted "finished living areas" at $100 per square-foot, "finished basement areas" at $50 per square-foot, "unfinished basement areas" at $25 per square-foot, garages at $35 per square-foot, bathrooms at $2,000 for a half-bath and $3,000 for a full-bath, and fireplaces at $3,000 each. (*Id.*) Site and view adjustments were based on land sale studies. (*Id.*) Healy determined adjusted sales prices ranging from $1,178,050 to $1,452,260 and concluded a value of $1,225,000 under the sales comparison approach. (Ptf's Ex A at A-6, A-7.)

Karge testified that his experience is in mechanical engineering and the construction industry. He testified concerning the "discrepancies" that he found with Healy's adjustments. Karge testified that Plaintiff's assessment records for Plaintiff's sales "show [land] values of $304,717 [to] $312,485 whereas the subject [property] land value is $154,000[.]" (Defs' Ex 1 at 1; Defs' Rebuttal Ex 1 at 3.) He calculated site adjustments for each of Plaintiff's sales based on the difference between the roll land value for the sale and the subject property. (Defs' Rebuttal Ex 1 at 3.) Karge also calculated adjustments for "year built" for each of Plaintiff's sales using one percent per year difference. (*Id.*) Karge testified that Plaintiff's sale 3 does not have any

unfinished basement space; the 613 square feet is "probably" the exercise room. He testified that Barbara Karge,[1] a realtor, worked at the Street of Dreams and saw an exercise room in sale 3. Karge testified that the total finished living area for sale 3 should be 5,983 square-feet.[2] He testified that time adjustment for sale 5 should have been 11 percent (-$23,055), not 6 percent, based on the ratio study cited by Plaintiff.[3] (*See* Defs' Rebuttal Ex 1 at 3; Ptf's Ex A at A-6, A-7.) Karge testified that the adjustments to sale 5 that Plaintiff presented to the Board of Property Tax Appeals (BOPTA) differed by a total of $166,675 from the adjustments that Plaintiff presented at trial. (*See* Defs' Rebuttal Ex 1 at 1 (showing the "Jan 25, 2011" adjusted sale price to be $1,166,375).)

Karge testified that he has been inside all of Plaintiff's sales except sale 1 and he provided his opinion of the "quality" of each sale. Karge testified that he agrees that sales 2 and 4 are of inferior quality, but thinks that the $100,000 adjustments are excessive and $50,000 would be more appropriate. Karge testified that the quality of sale 3 is superior to the subject property and a $50,000 adjustment is appropriate. He testified that sale 5 is superior to the subject property and that $200,000 is a more appropriate adjustment than the $50,000 adjustment used by Healy. Karge testified that Plaintiff's sale 4 is "currently" on the market for approximately $710,000 and that it has been on the market for "a year plus." (*See* Defs' Rebuttal Ex 1 at 3.) He testified that he spoke to the owner about the June 2009 purchase and the owner reported that he received favorable financing. Karge testified that he determined his own adjusted sale prices for each of Plaintiff's comparable sales; the average adjusted price was

---

[1] Defendant Barbara Karge was present for trial but did not testify.

[2] Using Healy's adjustments, that change would remove the $15,375 adjustment for unfinished basement and reduce the $72,200 adjustment for finished living area to $9,900, for an adjusted sale price of $1,375,585.

[3] Karge's proposed revision to Plaintiff's sale 5 time adjustment yields an adjusted sale price of $1,323,745.

$1,005,916.  (*See id.*)

Karge testified that Plaintiff's sales 1 and 2 include outbuildings that Healy did not account for in his sales comparison approach.  Healy made a correction to Plaintiff's sale 2 adjusted sale price based on Karge's evidence regarding a 650 square-foot shop.  Karge testified that an adjustment of $35 per square-foot is reasonable for the shop and Healy agreed, revising the adjusted sale price of sale 2 to $1,155,300.  With respect to sale 1, Healy testified that the shop is an older building, so he does not agree with Karge's proposed adjustment of $72,000; he thinks $25,000 is a reasonable adjustment.  Healy testified that he disagrees with Karge's site adjustments based on the roll land values, stating that roll land values are representative of mass appraisal.

B.      *Plaintiff's Cost Approach and Reconciled Value*

Healy testified that he determined a value of approximately $1.4 million under the cost approach, using "land valuation studies" and the Department of Revenue cost factor book; that was "the basis for the original valuation of the subject [property] for January 1, 2010."  (Ptf's Ex A at A-14, A-17.)  He determined that the cost approach "is typically more reliable with a newly constructed home" so it was "given less weight in the final reconciliation."  (Ptf's Ex A at A-17.)  Healy determined a reconciled value of $1,225,000 as of January 1, 2010.  (*Id.*)

C.      *Defendants' Comparable Sales*

Karge provided a sales grid with the four comparable sales that he presented to BOPTA including his own adjustments.  (Defs' Rebuttal Ex 1 at 4.)  Karge testified that the average adjusted sale price was $801,459.  (*Id.*)  He testified that all of the evidence taken together supports a value of $907,000.  Healy testified that Defendants' sales 1 and 2 are both in the Hidden Lakes subdivision, which suffers from a "stigma" associated with a previous land slide.

He testified that he does not consider them to be good comparable sales for the subject property. Karge testified that the Hidden Lakes subdivision was a Street of Dreams location; he disagrees that the properties suffer from a "stigma." (*See* Defs' Ex 1 at 1.) Healy testified that Defendants' sale 3 suffers from "bubbled" paint and drainage problems; the buyer was aware of those problems at the time of purchase and is replacing the interior.

D.     *Roll Values and Requested Values*

BOPTA reduced the 2010-11 real market value of the subject property to $907,000. (Ptf's Compl at 2.)  In its Complaint, Plaintiff requests that the 2010-11 real market value of the subject property be increased to $1,412,530, which was the 2010-11 roll real market value set by Plaintiff. (*Id*. at 1.)  In his appraisal, Healy concluded a 2010-11 real market value of $1,225,000. (Ptf's Ex A at A-17.)  Defendants request that the 2010-11 real market value of $907,000 set by BOPTA be sustained. (Def's Ex 1 at 2.)  The 2010-11 maximum assessed value is $1,226,488. (Compl at 2.)

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2010-11 tax year.  "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev*., 13 OTR 343, 345 (1995)).  Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."[4]

---

[4] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

The assessment date for the 2010-11 tax year was January 1, 2010. ORS 308.007; ORS 308.210.

Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the [plaintiff] will have failed to meet [its] burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). Plaintiff "must establish by competent evidence what the appropriate value of the property was as of the assessment date in question." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Lebeck v. Multnomah County Assessor* (*Lebeck*), TC-MD No 100404D at 3 (Feb 16, 2011). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

"Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). There are three methods of valuation that are used to determine real market value: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. *Allen v. Dept of Rev.*, 17 OTR 248, 252 (2003); *see also* OAR 150-308.205-(A)(2)(a) (stating that all three approaches must be considered although all three approaches may not be applicable to the valuation of the subject property). The approach of valuation to be used is a question of fact to be determined on the record. *Pacific Power & Light Co. v. Dept. of Revenue.*, 286 Or 529, 533, 596 P2d 912 (1979). The parties agree that the sales comparison approach is the most persuasive in this case. Plaintiff

determined a value under the cost approach, but afforded that value little to no weight in its final reconciliation. Neither party considered the income approach to be applicable.

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

OAR 150-308.205-(A)(2)(c). "The court looks for arm's-length sale transactions of property similar in size, quality, age and location * * * in order to determine the [real market value]" of the subject property. *Richardson*, WL 21263620 at *3. The adjusted sale prices of Plaintiff's comparable sales, as corrected at trial by Healy, range from $1,155,300 to $1,452,260 and support a real market value of $1,225,000. Karge testified that Healy's inclusion of an unfinished basement on sale 3 was in error and that the 613 square-feet of unfinished basement should be counted in the total finished living area. Correction of that error yields an adjusted sale price of $1,375,585 for sale 3. Karge testified that Healy used an incorrect time adjustment for Plaintiff's sale 5; correction of that error yields an adjusted sale price of $1,323,745 for sale 5. Even if the court accepts those corrections to Plaintiff's sales 3 and 5, a real market value of $1,225,000 is supported by Plaintiff's comparable sales.

Karge suggested site adjustments for Plaintiff's comparable sales based on roll real market land values. Roll real market values are not "actual market transactions" and are not, therefore, given weight under the sales comparison approach. OAR 150-308.205-(A)(2)(c). Karge also suggested different adjustments to Plaintiff's comparable sales for year built and quality. The basis for those proposed adjustments is unclear and they are not supported by competent evidence. Defendants' comparable sales are afforded little weight because, like Defendants' proposed adjustments to Plaintiff's comparable sales, they are not supported by competent evidence such as "testimony from licensed professionals such as appraisers, real

estate agents and licensed brokers." *Lebeck*, TC-MD No 100404D at 3. The court finds that Plaintiff proved by a preponderance of the evidence that the 2010-11 real market value of the subject property was $1,225,000.

### III. CONCLUSION

After carefully considering the testimony and evidence, the court finds that the 2010-11 real market value of the subject property was $1,225,000. Now, therefore,

IT IS THE DECISION OF THIS COURT that the real market value of property identified as Account 01782798 was $1,225,000 for the 2010-11 tax year.

Dated this ____ day of January 2012.

_____
ALLISON R. BOOMER
MAGISTRATE PRO TEMPORE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Pro Tempore Allison R. Boomer on January 9, 2012. The Court filed and entered this document on January 9, 2012.*